**George NICK and June Nick, Plaintiffs,**

**v.**

**SHEARSON/AMERICAN EXPRESS, INC., and Richard Larson, Defendants.**

Civ. No. 4–84–793.

United States District Court, D. Minnesota, Fourth Division.

Dec. 14, 1984.

Terrence J. Fleming, Delaney & Solum, Minneapolis, Minn., for plaintiffs.

J. Jackson, Dorsey & Whitney, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiffs, George and June Nick, brought this action for recission and damages against defendant, Shearson/American Express, Inc. (Shearson) and Richard Larson, alleging violations of securities laws under Sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77 *et seq.* (1933 Act), and Section 10(b) and Rules 10b–5 and 10b–16 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78 *et seq.* (1934 Act). Jurisdiction is alleged under Section 22(a) of the 1933 Act and Section 27 of the 1934 Act. This matter is now before the court upon the motion of defendants to dismiss.

### I. Background

For purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) the facts as alleged in the complaint are to be taken as true.

In the mid-1970s, the Nicks began doing business with Richard Larson, a broker-dealer with Shearson. At that time the Nicks' savings consisted almost entirely of Chicago and Northwestern (CNW) common stock. Up until 1982, the Nicks' primary involvement in the securities market was their sale of CNW stock to pay for home improvements and other personal obligations.

In May 1982, Larson represented to the Nicks that they could preserve their capital with no risk by selling short-against-the-box and that there would be no interest charges for such a transaction. The Nicks agreed to sell short-against-the-box and delivered 12,000 shares of CNW stock to the defendants, who then sold 12,000 shares of the stock short-against-the-box for the Nicks' account.

Soon thereafter, interest charges began appearing on the Nicks' monthly statements for their account. When the Nicks inquired about these charges, Larson stated to the Nicks that there were no interest charges for short-against-the-box transaction, that the interest charges reflected in the monthly statement were erroneous and that the interest charges would be withdrawn or otherwise cancelled. After re-

ceiving these further assurances, the Nicks permitted the transaction to remain open.

The parties differ strongly on the applicability of the securities laws to these facts. The Nicks contend that these representations were false and that Larson's failure to disclose other information was misleading. They claim that as a result of defendants' conduct they entered into the short-against-the-box transaction which was not suitable to their investment objectives and financial position. They allege that this conduct violates antifraud provisions of both the 1933 and 1934 Acts. They seek withdrawal and cancellation of all interest charges and rescission of the short-against-the-box transaction and return of their 12,000 shares of CNW stock. The defendants seek to dismiss the Nicks' complaint in its entirety for failure to state a claim upon which relief can be granted.

*II. Discussion*

The defendants argue that the claims brought under Section 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2), should be dismissed.[1] They assert that since the Nicks are sellers, not purchasers, they have no standing to sue under Section 12(2). They argue in the alternative that the claim should be dismissed for failure to plead facts showing compliance with the governing statute of limitations under Section 13 of the 1933 Act, 15 U.S.C. § 77m. The Nicks disagree and assert that a "short seller" who borrows stock on account from a broker by pledging his stock as collateral is a purchaser for purposes of Section 12(2).

■ Only purchasers in an "offer or sale" of a security have standing to sue under Section 12(2). Whether an individual who borrows stock for a "short sale" is a purchaser for purposes of Section 12(2) is an open question with no authority directly on point. The Nicks have analogized to the pledge of stock to a bank as a "sale of securities." *See Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). The defendants at the hearing argued that a loan of stock is distinguishable from the pledging of stock involved in *Rubin* and that in actuality the short sale is merely a bookkeeping entry. They also believe that the "purchaser" in *Rubin* was the Bank which received the pledges, while in this case it is Shearson who received the pledge of stock from the Nicks.

■ A proper determination of this issue of who is a purchaser requires the court to analogize to cases involving other similar types of stock transactions. The underlying mechanics of the particular stock transaction and the actual facts involved are crucial to determining whether a "short seller" is a purchaser within the framework of the securities laws and specifically Section 12(2) of the 1933 Act. *Cf. Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (pledge of stock is the sale of a security under Section 17(a) of the 1933 Act); *Gutter v. Merrill Lynch, Pierce, Fenner & Smith,* 644 F.2d 1194 (6th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982) (writer of an option contract is not a purchaser under Section 12(2)). The record, however, fails to provide the court with the evidentiary foundation necessary to evaluate what a short sale is and how it functioned in this particular situation.[2] Accordingly, the court cannot at this time rule as a matter of law that the Nicks are not purchasers under Section 12(2).

The Nicks concede that they must plead facts showing compliance with Section 13 in order to state a claim under Section 12(2). *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1033 (D.Minn.

---

1. Section 12(2) provides in pertinent part, that a person who "offers or sells a security ... by means of a[n] ... oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements ... not misleading ... shall be liable to the person purchasing such security from him...."

2. For example, while the parties have provided a general definition of a "short-against-the-box" transaction, it is not clear exactly what rights and liabilities are created at the time of such a transaction.

1981). Accordingly, they will be given 20 days to file an amended complaint to state their claim under Section 12(2).

■ Count two of the complaint alleges a violation of Section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a). Section 17(a), however, does not provide a private right of action in this circuit. *Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152, 155 (8th Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). Accordingly, the Nicks have no standing to bring this claim, and it should be dismissed.

■ The defendants assert that the Nicks have failed to state a claim under Rule 10b–16 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–16. That rule provides in part that it is unlawful "for any broker or dealer to extend credit" unless it "has established procedures to assure that each customer (1) is given or sent at the time of opening the account" a written statement disclosing the terms of credit including the interest rate to be charged. Subsection (b) of the rule provides that it is unlawful to make changes in the credit terms established unless the required notice is given.

The Nicks allege that credit terms were established through Larson's representations that no interest charges were to be incurred. They argue that a cause of action arose under Rule 10b–16 when they were nevertheless charged interest arising from the short-against-the-box transaction.

Rule 10b–16 regulates the establishment of procedures for providing credit information at the time an account is opened. It also creates a duty to inform the customer when changes are made in the original credit terms. Larson's representations about the operation of the short-against-the-box transaction cannot form the basis for a claim under Rule 10b–16.[3] There is lacking the necessary allegation that the defendants failed to establish procedures to provide credit disclosure or that the terms initially established for the Nicks' account in the 1970's were changed without the required notice.

The defendants also assert that any claims brought under Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, should be dismissed because the Nicks could not have reasonably relied on the alleged misrepresentations.[4] They argue that the Nicks, as a matter of law, could not have relied on a representation that a transaction involved "no risk" because every transaction involves some risk. The Nicks assert that the representations of no risk and no interest charges are actionable because they were unsophisticated investors and the transaction was complex.

■ The sufficiency of the Nicks' allegations must be reviewed in light of the particular facts involved and the standard for a motion to dismiss. The complaint shows the Nicks to be unsophisticated investors whose savings consisted almost entirely of CNW common stock. They had up until this transaction been very conservative investors whose only trading activity was the occasional sale of stock to pay for personal debts. Investors, especially if they are unsophisticated, may reasonably be unaware of the details and risks of specialized investment transactions. *Alvord v. Shearson Hayden Store, Inc.*, 485 F.Supp. 848, 854 (D.Conn.1980); *see Zerman v. Ball*, 735 F.2d 15, 21 (2d Cir.1984). Evaluating the claim in the light most favorable to the plaintiffs, as the court must on a motion to dismiss, it cannot be said as a matter of law that the Nicks could not have reasonably relied on the alleged representations.

*Tomis v. Shearson Hayden Stone, Inc.*, 459 F.Supp. 1355 (S.D.N.Y.1978).

---

**3.** The defendants also argue that there is no private right of action under Rule 10b–16. While it remains an open question whether a private right of action exists, that issue need not be reached here because of the Nicks' failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Compare Liang v. Dean Witter & Co.*, 540 F.2d 1107, 1113 n. 25 (D.C.Cir.1976) *with Establissement*

**4.** At the hearing, counsel for defendants withdrew their contention that the allegations of fraud failed to satisfy Fed.R.Civ.P. 9(b)'s requirement of particularity.

ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion of defendants Shearson/American Express, Inc. and Richard Larson to dismiss count one is denied. Plaintiffs have twenty days from the date of this order to serve and file an amended complaint stating their claim under Section 12(2).

2. The motion of defendants to dismiss count two with prejudice is granted.

3. The motion of defendants to dismiss with prejudice that portion of count three that asserts a claim under Rule 10b–16 is granted.

4. The motion of defendants to dismiss that portion of count three that asserts a claim under Rule 10b–5 is denied.